## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **CHEMIKA SMITH**<br>4504 Rose Farm Dr<br>Louisville, KY 40258<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**EMCOR FACILITIES SERVICES INC.,**<br>c/o Corporation Service Company<br>421 West Main Street<br>Frankfort, KY 40601<br><br>　　　　Defendant. | Civil Action No.: 3:23CV-61-DJH<br><br>Judge: _____ |

## COMPLAINT WITH JURY DEMAND

Chemika Smith states the following for her Complaint against EMCOR Facilities Services Inc.:

### INTRODUCTION

1. This action arose after Defendant EMCOR Facilities Services Inc. engaged in discriminatory practices against a loyal employee who served the company for years without incident until she complained about discrimination and retaliation. Indeed, days after Ms. Smith stood up to Defendant's blatant discriminatory practices, reported racial discrimination, and informed Defendant that she intended to file and EEOC charge of discrimination, Defendant terminated her.

### PARTIES

2. Plaintiff Chemika Smith ("Ms. Smith" or "Plaintiff") is a resident of Jefferson County, Kentucky. Plaintiff's claims arose out of an employment relationship with EMCOR Facilities Services Inc.

3. EMCOR Facilities Services Inc. ("Defendant") is a corporation registered with the Kentucky Secretary of State doing business in Jefferson County, Kentucky.

4. Defendant employs over 1000 employees and engages in interstate commerce.

5. Upon information and belief, Defendant employs over 50 employees within 75 miles of Ms. Smith's work location.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Ms. Smith asserts claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family and Medical Leave Act ("FMLA").

7. Ms. Smith also states claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

8. Venue is proper in this Court because the transactions and occurrences occurred in Louisville, Kentucky.

9. Ms. Smith timely made a claim with the Equal Employment Opportunity Commission and received a right to sue letter.

10. Ms. Smith has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## BACKGROUND FACTS

11. Ms. Smith is an African American female.

12. Ms. Smith diligently and competently worked for Defendant for nearly three years.

13. Ms. Smith started working as an administrative assistant for Defendant in approximately 2019.

14. Ms. Smith was qualified for her position and repeatedly met and exceeded Defendant's expectations.

15. Ms. Smith was the only African American employee at her location.

16. Neither of Ms. Smith's two supervisors were minorities.

17. Defendant fosters an environment that suppresses minorities and punishes those who attempt to stand up to Defendant's discriminatory practices.

18. Ms. Smith complained to Defendant regarding what she perceived as racially insensitive conduct and a hostile work environment. For example:

   a. Ms. Smith complained that her manager made racially insensitive comments regarding her hair style. Ms. Smith's manager even asked her "how long does it take to put [her] fake hair in."

   b. Ms. Smith complained that her manager made racially and sexually insensitive comments about her clothes and the way her clothes fit her body.

   c. Ms. Smith complained that her manager made a racially insensitive joke regarding a funeral she was attending. In fact, after informing Defendant that Ms. Smith would be attending a funeral, Ms. Smith's manager told her "so is there going to be some big black lady running to the casket saying not my baby take me now?".

   d. Ms. Smith's manager asked her to sweep her office and make him a sandwich. When Ms. Smith refused to submit to her manager's abuse, he responded, "we need to go back to the good days where we smack the woman and make them listen."

   e. Likewise, Ms. Smith's manager would make racially insensitive comments regarding rap music.

19. Defendant did not take Ms. Smith's complaints of racial discrimination seriously.

20. Upon information and belief, Defendant did not reprimand Ms. Smith's manager for this conduct or conduct a proper investigation.

21. Defendant terminated Ms. Smith's manager for unrelated reasons and failed to properly investigate Ms. Smith's claims.

22. Several months later, Ms. Smith took FMLA leave.

23. Ms. Smith took FMLA leave because she needed to undergo a surgery.

24. Because of the surgery, Ms. Smith needed to take time off work to heal and recover and she was temporarily unable to perform her job functions.

25. Ms. Smith worked full time and was qualified for FMLA leave.

26. Ms. Smith provided Defendant with all the documentation required for FMLA leave.

27. Upon Ms. Smith's return from FMLA leave, her manager began to criticize and reprimand her for things she had not previously been reprimanded for.

28. For example, Ms. Smith's manager made constant comments and reprimands regarding her lunch break schedule. Before taking FMLA leave, Ms. Smith's manager had never complained about the times she took lunch.

29. In addition, Ms. Smith's manager reprimanded Ms. Smith for someone else's work product. In fact, some of the project's Ms. Smith's manager reprimanded her for was work her manager completed. Thus, Ms. Smith's manager reprimanded her for his own work product.

30. Likewise, Ms. Smith's manager had the facilities security monitor her check in procedures and times.

31. Ms. Smith's manager began to make critical comments regarding her family status.

32. Ms. Smith sometimes used her lunch break to help her daughter off the school bus.

33. Ms. Smith would never take more time off work for lunch than allotted.

34. Ms. Smith's manager constantly inquired about her daughter's father and why he was unable to assist.

35. Ms. Smith's manager made crude jokes and comments regarding Ms. Smith's daughter's absent father.

36. Ms. Smith was humiliated regarding these comments and believed they were based on her race and sex.

37. Ms. Smith believed these comments were inappropriately stereotyping her race and sex.

38. After weeks of retaliation, Ms. Smith reported her manager's conduct to her manager's supervisor.

39. The supervisor wanted to meet with Ms. Smith and her manager in person.

40. However, the supervisor and manager took this time to belittle Ms. Smith's family situation and gossip about her care for her daughter.

41. Ms. Smith complained to her manager's supervisor that her manager was discriminating against her because of her sex and because of her race.

42. Ms. Smith complained to Defendant that she felt like an outsider because she was the only black woman at her location.

43. Ms. Smith informed Defendant that she intended to file and U.S. Equal Employment Opportunity Commission ("EEOC") charge of discrimination.

44. Less than a week after Ms. Smith informed Defendant that she believed she was experiencing racial discrimination and sex discrimination and she was going to file an EEOC charge of Discrimination, Defendant terminated her.

45. Defendant's bogus reason for terminating Ms. Smith was false and is pretext.

46. Ms. Smith suffered damages and will continue to suffer damages in the future because of Defendant's actions.

## **CLAIMS**

### **COUNT I**
### **Racial Discrimination Under Title VII of the Civil Rights Act of 1964**

47. Ms. Smith restates and incorporates all paragraphs.

48. Ms. Smith is an African American female.

49. Ms. Smith was at all times qualified for her position.

50. Defendant's conduct created a hostile work environment based on Ms. Smith's race.

51. Defendant fosters a culture of racism.

52. Ms. Smith's manager made constant racially insensitive comments.

53. Ms. Smith's manager made constant comments regarding her child's lack of a father figure in a racially insensitive and stereotyping way.

54. Ms. Smith's manager treated her differently than non-minority coworkers.

55. Defendant terminated Ms. Smith because of her race.

56. Defendant's alleged reason for termination is bogus because non-minority employees engaged in similar or worse conduct and were not terminated.

57. Ms. Smith complained to Defendant's HR and her supervisor regarding discrimination and no actions were taken.

58. Defendant's comments and actions would be intimidating, hostile, or offensive to reasonable people.

59. Ms. Smith was required to endure Defendant's racist culture as a term and condition of her employment.

60. Ms. Smith suffered emotional distress due to the severe nature of the hostile work environment.

61. Defendant took no prompt remedial action to prevent Defendant's known racially insensitive conduct.

62. Defendant's actions were severe and pervasive.

63. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Smith.

64. As a direct and proximate result of the discrimination, Ms. Smith has sustained, and will continue to sustain, economic, and emotional injuries.

65. Ms. Smith is entitled to all damages and injunctive relief permissible under Title VII.

66. As a result of Defendant's actions, Ms. Smith has been harmed.

## COUNT II
**Sex Discrimination Under Title VII of the Civil Rights Act of 1964**

67. Ms. Smith restates and incorporates all paragraphs.

68. Ms. Smith is a female.

69. Ms. Smith was at all times qualified for her position.

70. Defendant's conduct created a hostile work environment based on Ms. Smith's sex.

71. Ms. Smith's manager made constant comments regarding her child's lack of a father figure.

72. Ms. Smith's manager constantly interrogated Ms. Smith on why her daughter's father could not assist her minor child.

73. Ms. Smith's manager berated Ms. Smith for being a single mother.

74. Ms. Smith's manager improperly stereotyped the gender roles.

75. Defendant's agents made flippant comments regarding Ms. Smith's parental status.

76. Ms. Smith complained to Defendant's HR and her supervisor regarding discrimination and no actions were taken.

77. Defendant's comments and actions would be intimidating, hostile, or offensive to reasonable people.

78. Ms. Smith suffered emotional distress due to the severe nature of the hostile work environment.

79. Defendant's actions were severe and pervasive.

80. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Smith.

81. As a direct and proximate result of the discrimination, Ms. Smith has sustained, and will continue to sustain, economic, and emotional injuries.

82. Ms. Smith is entitled to all damages and injunctive relief permissible under Title VII.

83. As a result of Defendant's actions, Ms. Smith has been harmed.

## COUNT III
### Retaliation Under Title VII

84. Ms. Smith restates and incorporates all paragraphs.

85. Ms. Smith was qualified for her position.

86. Ms. Smith made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful discriminatory employment practices based on her sex and race.

87. Ms. Smith reported Defendant's unlawful behavior to her manager's supervisor and to Defendant's HR department.

88. Ms. Smith informed Defendant that she intended to file an EEOC charge of discrimination and was terminated within days.

89. Ms. Smith's belief that her manager's behavior constituted sex and racial discrimination was reasonable and in good faith.

90. As a result of Ms. Smith's complaints, Defendant's agents and employees took materially adverse actions against her, including, issuing disciplinary warnings, threats of termination, and reprimands by her supervisors.

91. Defendant's adverse actions constituted retaliatory workplace harassment.

92. Within weeks of complaining about racial, gender, and sex discrimination, Defendant terminated Ms. Smith.

93. Ms. Smith was humiliated, economically damaged, and suffered emotional distress.

94. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Smith.

95. As a direct and proximate result of the discrimination, Ms. Smith has sustained, and will continue to sustain, economic, and emotional injuries.

96. Ms. Smith is entitled to all damages and injunctive relief permissible under Title VII.

97. As a result of Defendant's actions, Ms. Smith has been harmed.

## COUNT IV
### Racial Discrimination Under KRS §344.

98. Ms. Smith restates and incorporates all paragraphs.

99. Ms. Smith is an African American female.

100. Ms. Smith was at all times qualified for her position.

101. Defendant's conduct created a hostile work environment based on Ms. Smith's race.

102. Ms. Smith complained to Defendant's HR department regarding discrimination and no actions were taken.

9

103. Ms. Smith complained that her manager made racially insensitive comments regarding her hair style. Ms. Smith's manager even asked her "how long does it take to put [her] fake hair in."

104. Ms. Smith complained that her manager made racially and sexually insensitive comments about her clothes and the way her clothes fit her body.

105. Ms. Smith complained that her manager made a racially insensitive joke regarding a funeral she was attending. In fact, after informing Defendant that Ms. Smith would be attending a funeral, Ms. Smith's manager told her "so is there going to be some big black lady running to the casket saying not my baby take me now?".

106. Ms. Smith's manager asked her to sweep her office and make him a sandwich. When Ms. Smith refused to submit to her manager's abuse, he responded, "we need to go back to the good days where we smack the woman and make them listen."

107. Likewise, Ms. Smith's manager would make racially insensitive comments regarding rap music.

108. Defendant did not take Ms. Smith's complaints of racial discrimination seriously.

109. Defendant's comments and actions would be intimidating, hostile, or offensive to reasonable people.

110. Defendant fosters a culture of racism.

111. Ms. Smith was the only African American worker at her location.

112. Defendant terminated Ms. Smith because of her race.

113. Ms. Smith was required to endure Defendant's racist culture as a term and condition of her employment.

114. Ms. Smith suffered emotional distress due to the severe nature of the hostile work environment.

115. Defendant took no prompt remedial action to prevent Defendant's known racially insensitive conduct.

116. Defendant's actions were severe and pervasive.

117. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Smith.

118. As a direct and proximate result of the discrimination, Ms. Smith has sustained, and will continue to sustain, economic, and emotional injuries.

119. Ms. Smith is entitled to all damages and injunctive relief permissible under the KRS.

120. As a result of Defendant's actions, Ms. Smith has been harmed.

## COUNT V
### Retaliation Under KRS §344

121. Ms. Smith restates and incorporates all paragraphs.

122. Ms. Smith was qualified for her position.

123. Ms. Smith made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful discriminatory employment practices based on race.

124. Ms. Smith reported Defendant's unlawful behavior to her supervisor and to Defendant's HR department.

125. Ms. Smith's belief that Defendant's behavior constituted racial discrimination was reasonable and in good faith.

126. As a result of Ms. Smith's complaints, Defendant's agents and employees took materially adverse actions against her, including, issuing disciplinary warnings, threats of termination, and reprimands by her supervisors.

127. Defendant's adverse actions constituted retaliatory workplace harassment.

128. Within weeks of complaining about racial discrimination, Defendant terminated Ms. Smith.

129. Ms. Smith was humiliated, economically damaged, and suffered emotional distress.

130. Defendant's actions were willful and in a conscious disregard of the rights of Ms. Smith.

131. As a direct and proximate result of the discrimination, Ms. Smith has sustained, and will continue to sustain, economic, and emotional injuries.

132. Ms. Smith is entitled to all damages and injunctive relief permissible under KRS §344.

133. As a result of Defendant's actions, Ms. Smith has been harmed.

## COUNT VI
## FMLA Retaliation and Discrimination under 29 U.S.C. §§2614-15

134. Ms. Smith restates and incorporates all paragraphs.

135. Ms. Smith requested FMLA leave to undergo surgery and recover from surgery.

136. Ms. Smith notified Defendant of the serious health condition that made her temporally unable to perform her essential job functions.

137. Ms. Smith was qualified for FMLA leave.

138. Defendant retaliated against Ms. Smith for requesting and taking FMLA leave.

139. Defendant asked Ms. Smith if she actually needed to take that much time off work.

140. Upon Ms. Smith's return from FMLA leave, her manager began to criticize and reprimand her for things she had not previously been reprimanded for.

141. For example, Ms. Smith's manager made constant comments and reprimands regarding her lunch break schedule. Before taking FMLA leave, Ms. Smith's manager had never complained about the times she took lunch.

142. In addition, Ms. Smith's manager reprimanded Ms. Smith for someone else's work product. In fact, some of the project's Ms. Smith's manager reprimanded her for was work her manager completed. Thus, Ms. Smith's manager reprimanded her for his own work product.

143. Likewise, Ms. Smith's manager had the facilities security monitor her check in procedures and times.

144. Defendant terminated Ms. Smith because she exercised her rights under the FMLA.

145. Defendant's actions were malicious and in a conscious disregard of the rights of Ms. Smith.

146. Ms. Smith suffered damages and will continue to suffer damages because of Defendant's retaliation and discrimination.

147. Ms. Smith is entitled to all damages and injunctive relief permissible under the FMLA.

**WHEREFORE**, Ms. Smith respectfully requests that this Court find for her and award her the following:

    a. Compensatory damages;
    b. Reinstatement;
    c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;
    d. Statutory damages;
    e. Interest;
    f. Punitive damages;
    g. Attorney fees;
    h. Costs;
    i. Litigation expenses; and
    j. All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

### JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson